IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KERMIT DEARMAN, | No. C 06-03521 WHA |
| Plaintiff, | |
| v. | **ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT** |
| JO ANNE B. BARNHART, | |
| Defendant. | |

**INTRODUCTION**

In this social security appeal, the Court finds that the ALJ's conclusions were supported by substantial evidence and were free from legal error. The ALJ did not err in giving more weight to the opinions of non-treating specialists and medical experts than to the opinion of plaintiff's treating physician. The ALJ also properly assessed plaintiff's subjective testimony. Accordingly, plaintiff's motion for summary judgment is **DENIED** and defendant's cross-motion for summary judgment is **GRANTED**.

**STATEMENT**

**1.   PROCEDURAL HISTORY.**

On May 14, 2002, plaintiff Kermit Dearman applied for disability insurance benefits and supplemental security income. He alleged he was unable to work since October 12, 2001, due to loss of digits in the right hand, loss of motion in the right hand, nerve damage to his arm, and pain in his right knee, left knee, and left hand (AR 83–85; 345–47). His application was denied

both initially and upon reconsideration (AR 28–29). An administrative hearing was timely requested (AR 42–43).

On December 2, 2004, plaintiff had a limited hearing before ALJ Homer T. Ball, Jr. (AR 377–415). Plaintiff was allowed to introduce some additional medical evidence filed approximately two days before the hearing (AR 380). The medical examiner testifying at the hearing, Dr. Louis Lesko, did not have sufficient time to review the evidence before that hearing (AR 381–84). An additional hearing before ALJ Ball took place on March 3, 2005 (AR 416–502). At both hearings, plaintiff was represented by attorney David Hamilton. The ALJ rendered a decision on May 2, 2005, finding that plaintiff was not disabled (AR 13–22). Plaintiff requested administrative review (AR 359). The Appeals Council denied the request on March 31, 2006 (AR 6–9). Plaintiff filed an action before this Court on June 6, 2006, seeking judicial review pursuant to 42 U.S.C. 405(g). The parties now make cross-motions for summary judgment.

### 2. TESTIMONY AT THE ADMINISTRATIVE HEARING.

Plaintiff was born on April 8, 1961, and currently resides in Oakland, CA. He earned a high school diploma and completed one year of college. His first employment was with Oliver Tire and Rubber Company from 1980 until October 1984 (AR 90). He suffered an injury to his left knee during his time there and was away from work for eight months (AR 105–07). In October 1984, Dearman's right hand was accidentally caught in a machine (AR 147–51). He suffered a crush degloving injury resulting in the amputation of portions of two fingers of his right hand (*ibid.*).

After that, he testified that he worked as a car salesman from 1986 to 1995 (AR 396). He next worked as a machinist at Pyramid Brewery from March 1996 through August 1996 (AR 397). In August 1996, Dearman slipped and fell while on the job. He suffered an injury to his back and left knee and underwent surgery for those injuries (AR 397–398). Plaintiff then attended training to become a computer technician and he worked for approximately two years in that field (AR 399). He left that job in November 1999, because of increasing pain in his

2

back and left knee (AR 401). Dearman returned to selling cars from February 2000 through October 2001 (*ibid.*). He testified that at that time he was suffering increasing pain. He had problems writing for more than a few minutes at a time which made completing paperwork difficult (AR 401). He testified that he had engaged in no "substantial gainful activity" since October 12, 2001 (AR 425–26).

After he stopped working, Dearman testified that he was responsible for caring for his elderly father, now deceased (AR 429). Dearman took his father in for kidney dialysis four times per week and was able to perform some household tasks (AR 429–30). He also volunteered as an "associate minister" at his church, in which he participated in two hours of Bible study on Fridays and up to five hours of ministerial activities on Sunday (AR 442–43). He testified that he must recuperate after performing these duties (AR 443).

At the hearing, Dearman also testified that he suffered chronic low back pain, and pain in the left knee, right shoulder and right ankle (AR 431–32). He also suffered pain and decreased mobility in his right hand because of his past injuries (AR 433). He testified that he took up to five Vicodin per week for his shoulder pain, and up to 4,800 milligrams of Motrin per day for that and his other ailments (AR 435).

Vocational expert Malcolm Brodhinzsky was present at the first hearing on December 2, 2004. He testified that the facts were not sufficiently developed for him to comment on Dearman's work status (AR 408–10).

Vocational expert Stephen Davis testified at the second hearing on March 3, 2005. He testified that Dearman would be able to stand and walk for two hours continuously or up to four or five hours in one day (AR 486–87). He also concluded that plaintiff would be able to perform his former duties as a car salesman but included a 20 percent erosion of the job base because of Dearman's inability to climb stairs frequently (AR 487–88). Davis also offered other unskilled positions that Dearman could perform (AR 490).

Finally, medical expert Dr. Louis Lesko testified at the second hearing. Lesko had reviewed plaintiff's medical records and the opinions of other examining physicians. He

3

testified that although plaintiff had several medically determinable conditions, plaintiff should still be able to function and perform light work (AR 451). Lesko stated that because the injury to plaintiff's right hand occurred over 20 years ago, he had fully adjusted to the loss of his fingers (*ibid*.). Thus, the degloving injury was no longer a medically determinable condition, *i.e.*, a condition supported by medical evidence that could qualify Dearman as disabled. In Lesko's opinion, Dearman's left knee was a still medically determinable condition because he suffered arthritis (*ibid*.). Dearman, however, retained an adequate range of motion in his left knee (471–472). As to Dearman's back injury, the herniated disc was a medically determinable condition, but there were no attendant neurological problems (AR 451). Lesko commented that many people with the same injury functioned well (AR 453). Lesko testified that he saw no evidence of any medically determinable condition related to plaintiff's shoulder pain (AR 452). The x-rays of Dearman's ankle were normal, so Lesko stated that there was no evidence of a medically determinable condition (AR 452). Finally, the ALJ asked Lesko if any of Dearman's impairments singly or in combination met or equaled a listed impairment. Lesko answered no (AR 454).

When asked about Dearman's capacity to perform work, Lesko testified that plaintiff could sit for two hours at a time and could stand a total of four hours in a day with breaks (AR 458–59). He agreed that Dearman should not attempt to go up and down stairs frequently and that he should avoid kneeling or squatting (AR 459). Despite this, Lesko opined that Dearman had a functional range of motion in his left knee (AR 472). Lesko stated that Dearman could write because he had accommodated to his injury. He would likely be able to do some keyboarding (AR 460). Lesko also testified that he thought that Dearman could walk up to three hours per day (AR 486).

### 3. MEDICAL EVIDENCE.

The medical evidence was summarized in the ALJ's decision (AR 16–22). This includes medical records from a number of hospitals and clinics and includes records from Dearman's examining physicians as well as physicians from state agencies. This order will also

4

briefly review both plaintiff's self-reported symptoms and the findings of each physician who examined him.

In a pain questionnaire dated May 29, 2002, plaintiff stated that he had pain in his right hand, left hand, back, and knees (AR 102). He explained that he took 4,500 mg of Motrin each morning which was prescribed to him by the Highland Hospital (AR 102–03). He also stated that because of the pain, he could not kneel, occasionally had problems opening doors and jars, and could not stand for long periods of time (AR 103). He was able to perform errands such as going to the post office or grocery store without assistance (AR 104). Dearman also filled out an exertional daily activities questionnaire dated May 31, 2002. It stated that depending on the day, he can climb stairs, and that he could lift and carry items such as computers, servers, and printers (AR 113–14). At the time, plaintiff wore a knee brace prescribed to him by Dr. Debenham, the orthopedic surgeon who operated on his knee (AR 115). He submitted an additional daily activities questionnaire dated October 24, 2002. His answers were consistent with his previous questionnaire (AR 128–32). He added that it was very difficult for him to drive because of the pain in his wrists and that he could work some days, but thought he could not be a reliable employee because his pain varied day-to-day (*ibid.*).

Dearman's neighbor, Rachel Sonne, submitted a daily activities questionnaire on his behalf on October 24, 2002. She stated that plaintiff could take care of most of the household chores. Occasionally he needed her assistance, and it often took him longer to do them than it would a normal person (AR 123–124). Sonne also stated that Dearman needed no assistance in leaving the house, but that he sometimes needed help driving (AR 125).

Plaintiff's primary-care physician since April 2003, has been Dr. Amy Hsiao. She is a family practitioner. In three letters submitted to the ALJ, Dr. Hsiao summarized plaintiff's physical impairments, treatment, and physical limitations (AR 286, 292, 343–44). Her letter dated September 7, 2004, listed Dearman's conditions as (1) chronic low back pain with foraminal stenosis and disc herniation, (2) chronic bilateral knee pain with degenerative arthritis in both knees, (3) chronic right shoulder pain, (4) history of work-related degloving injury, and

5

1  (5) chronic right ankle pain with likely osteoarthritis (AR 343–44). She also stated that
2  Dearman reported a pain level of six to ten on a ten-point scale (*ibid*.). He was unable to stand
3  for more than 30 minutes and could not sit for more than two hours without significant pain
4  (*ibid*.). She reported decreased dexterity in plaintiff's hands and stated that he could not write
5  more than a few sentences without pain (*ibid*.). All three of her letters stated that in her
6  opinion, Dearman was unable to work.

7  In his opinion, the ALJ cited the orthopedic evaluation of Dr. Calvin Pon, a consultative
8  examiner specializing in physical medicine and rehabilitation (AR 20). Dr. Pon reviewed
9  plaintiff's medical records and performed his own an examination and interview. In a report
10 dated July 30, 2002, Dr. Pon stated that Dearman would be able to perform a limited range of
11 light work (AR 205–08). Dearman would be able to stand and walk for four to six hours per
12 day but should not attempt to stoop, crouch, or use stairs frequently (*ibid).*

13 Orthopedic surgeon Dr. John Chu examined plaintiff on February 9, 2004. After
14 reviewing plaintiff's medical records and conducting his own examination and interview, Dr.
15 Chu stated that in his opinion, Dearman could perform light work (AR 241–50). Such work
16 could include standing and walking for six hours per day with intermittent breaks and lifting
17 small amounts of weight (*ibid.*). He agreed with Dr. Pon that Dearman should refrain from
18 bending, stooping, or using stairs frequently (*ibid.*).

19 Dearman was also examined by state agency reviewing physicians in August and
20 December of 2002 (AR 231–38). Those examinations also agreed that plaintiff could engage in
21 light work, though time periods for sitting and standing differed slightly from the other medical
22 opinions (*ibid.*).

23                                                      **ANALYSIS**
24      **1.    LEGAL STANDARD.**
25 A decision denying disability benefits must be upheld if it is supported by substantial
26 evidence and free of legal error. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).
27 Substantial evidence is "more than a scintilla," but "less than a preponderance." *Smolen v.*
28

*Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Ibid.* The Court must "review the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion." *Andrews*, 53 F.3d at 1039. "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities;" thus, where the evidence is susceptible to more than one rational interpretation, the decision of the ALJ must be upheld. *Ibid.*

The claimant has the burden of proving disability. *Id.* at 1040. Disability claims are evaluated using a five-step inquiry. 20 C.F.R. 404.1520. In the first four steps, the ALJ must determine: (i) whether the claimant is working, (ii) the medical severity and duration of the claimant's impairment, (iii) whether the disability meets any of those listed in Appendix 1, Subpart P, Regulations No. 4, and (iv) whether the claimant is capable of performing his or her previous job; step five involves a determination of whether the claimant is capable of making an adjustment to other work. 20 C.F.R. 404.1520(a)(4)(i)–(v). In step five, "the burden shifts to the Secretary to show that the claimant can engage in other types of substantial gainful work that exists in the national economy." *Andrews*, 53 F.3d at 1040. If the ALJ chooses to use a vocational expert, hypothetical questions asked "must 'set out all of the claimant's impairments.'" *Lewis v. Apfel*, 236 F.3d 503, 517 (9th Cir. 2001)(internal citation omitted).

### 2. THE ALJ'S FIVE-STEP ANALYSIS.

In his decision, the ALJ found at step one of the sequential evaluation process that plaintiff's work history showed that he had not engaged in substantial gainful activity since October 12, 2001 (AR 18). Assuming plaintiff met the conditions in the other four steps, his request to change his disability onset date to that date was proper. At steps two and three, the ALJ found that Dearman suffered from medically determinable impairments that account for his pain in the low back, left knee, and right wrist and hand. These conditions, even considered in combination did not meet or equal any listed impairment (AR 19). In finding that Dearman did not meet any listed impairment, the ALJ relied on the opinions of Dr. Lesko and Dr. Chu. The

7

1  ALJ accorded the opinion of Dr. Hsiao, plaintiff's treating physician, less weight because she
2  was a family practitioner, not an orthopedist (*ibid*.). Additionally, the ALJ found that Dearman
3  had fully adapted to his hand injury because it had occurred nearly 20 years ago, and his job
4  history was commensurate with that finding (*ibid.*). The ALJ also found that Dearman had not
5  been disabled for a continuous period of 12 months (*ibid*.). Dearman had stated in his daily
6  activities questionnaire that he performed activities such as volunteering at his church and
7  helping his father get to dialysis appointments. Those activities were consistent with being able
8  to perform light work (*ibid*.).

9  The ALJ went on to find that plaintiff had residual functional capacity to perform light
10 work activities, and declined to adopt the "rather extreme limitations" proferred by Dr. Hsiao
11 (AR 20). The ALJ found that Dearman would be able to stand and walk continuously up to two
12 hours for a total of four hours in a workday. His use of stairs and ramps should be limited. He
13 would be able to write for up to 30 minutes continuously (*ibid*.). At step four, the ALJ relied on
14 the vocational expert's testimony to show that Dearman would be able to do his previous work
15 as an automobile salesperson for the most part (*ibid*.). The vocational expert opined that
16 plaintiff would not be able to do any jobs that involved frequently climbing stairs and accounted
17 for this by eroding plaintiff's job base by 20 percent. Accordingly, the ALJ found that Dearman
18 could do his prior work and was not disabled. The ALJ did not address the fifth step as
19 Dearman was found not disabled at the fourth step.

20 Plaintiff now argues that (1) the ALJ's failure to give appropriate weight to the opinion
21 of plaintiff's treating physician was legal error; (2) the ALJ's reliance on the medical opinion of
22 a non-examining medical expert was legal error and not based on substantial evidence; and (3)
23 the ALJ's reasons for discrediting plaintiff were not clear and convincing and were not based on
24 substantial evidence. Plaintiff's arguments are not persuasive.

8

**3. THE ALJ DID NOT ERR IN GIVING LESS WEIGHT TO OPINION OF PLAINTIFF'S TREATING PHYSICIAN.**

Plaintiff argues that the ALJ should have given more weight to Dr. Hsiao's opinion, as she was Dearman's treating physician. "We afford greater weight to a treating physician's opinion because he is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1987). Treating physician's opinions are only controlling if they are based on clinical evidence and are not controverted by other opinions. 20 C.F.R. 404.1527(d)(2). If controverted, the treating physician's opinion is accorded deference, but it may be set aside if the ALJ "make[s] finding setting forth specific, legitimate reasons for doing so that are based on substantial evidence." *Thomas v. Barnhart*, 257 F.3d 947, 957 (9th Cir. 2002).

Contrary to plaintiff's arguments, the ALJ did not dismiss the opinion of the treating physician or without proper consideration. The ALJ also considered other physician's opinions that contradicted Dr. Hsiao's, including the opinions of Dr. Pon, a consultative examiner and orthopedist who examined Dearman in 2002, Dr. Chu, an orthopedic surgeon who examined Dearman in 2004, and disability determination specialists from state agencies. Their opinions conflicted. In Dr. Hsiao's opinion, Dearman was capable of doing very little work at all. The other opinions varied in what plaintiff could do, but agreed that he could do at least some light work.

Plaintiff also argues that the ALJ merely concluded that the other physician's opinions were entitled to more weight without stating reasons for doing so. The ALJ stated in his opinion that he gave less weight to Dr. Hsiao's opinion because she was a family practitioner, where Dr. Chu and Dr. Pon were orthopedic specialists (AR 19). The ALJ then decided that Dr. Hsiao was less qualified to give opinions on Dearman's conditions (*ibid.*). The ALJ determined, after the hearing and after reviewing the record, that Dearman suffered lumbar disease and degenerative arthritis in his lower back, loss of motion and sensation in his right hand, and degenerative osteoarthritis in his left knee (AR 20). The ALJ also determined that

9

there were no medically determinable conditions that could account for Dearman's shoulder and wrist pain. These medical findings do not conflict with Dr. Hsiao's opinion. The medical opinions differed, however, in the degree of activity that plaintiff could perform and the amount of pain that plaintiff had suffered. Plaintiff's argument that the ALJ did not assess the medical evidence is simply incorrect, the ALJ relied on different medical opinions based on that medical evidence.

### 4. THE ALJ DID NOT ERR IN RELYING ON THE OPINION OF A NON-EXAMINING MEDICAL EXPERT.

Plaintiff next argues that the ALJ's reliance on the medical expert's opinion was in error and not supported by substantial evidence. The role of a medical expert is to examine the medical record and render an opinion on what the record reflects. 20 C.F.R. 404.1527(f)(2)(iii). "[T]he contrary opinion of a non-examining medical expert does not alone constitute a specific, legitimate reason for rejecting a treating or examining physician's opinion, it many constitute substantial evidence when it is consistent with other independent evidence in the record." *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). Plaintiff is correct in arguing that the bulk of the medical findings in this case agree. The major differences of opinion are in plaintiff's physical limitations.

Plaintiff again argues that the ALJ should have given the treating physician's opinion more weight. Instead, plaintiff contends, the ALJ adopted the opinion of the medical expert without giving reasons, rejecting both Dr. Hsiao's opinion and the opinion of the other treating physicians. Here, the medical expert stated that he reviewed the medical evidence and could find no medically recognizable condition at step two on which plaintiff's shoulder and ankle pain could be based. Dr. Lesko also stated that because plaintiff still had good range of motion in his knee, he would be able to walk (AR 476–77). Finally, he gave Dr. Hsiao's opinion less weight because the medical evidence, which Dr. Lesko had reviewed, did not support her conclusion that the plaintiff was unable to work.

10

1  Plaintiff also faults the ALJ for not citing the opinion of Dr. Lamont Cardon, an
2 orthopedic surgeon who examined Dearman.  Much as the other doctors did, Dr. Cardon found
3 that Dearman suffered from the earlier amputation of two fingers of his right hand, back pain
4 shoulder pain, and knee pain (AR 366).  His opinion regarding limitations on Dearman's
5 abilities was closer to Dr. Hsiao's than any of the other opinions.  As mentioned above, the
6 ALJ's role is resolve ambiguities, and he may properly accord more weight to some medical
7 opinions than others.  The ALJ's decision was still based on substantial evidence despite not
8 citing to Dr. Cardon's opinion.

### 5. THE ALJ DISCREDITED PLAINTIFF'S TESTIMONY BASED ON SUBSTANTIAL EVIDENCE.

Finally, plaintiff argues that the ALJ improperly discredited his testimony.  "Unless there is affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be 'clear and convincing.'" *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998).  Plaintiff argues that the reasons cited for discrediting his subjective testimony were not valid.  Specifically, he argues that the ALJ mischaracterized plaintiff's testimony about the level of pain medication he had been taking and his daily activities.

At the hearing, plaintiff testified that the amount of medication that he took varied, and that he had not been taking the Vicodin prescribed for him more than once or twice per week until a time more recent to the hearing (AR 448).  One of the reasons plaintiff cited for not taking it was that it slows him down, which was characterized in plaintiff's brief as putting him in a "catatonic state" (Br. at 16).  Plaintiff also testified that he also took over-the-counter medications such as Motrin and aspirin, the use of which also varied (AR 448–49).  Plaintiff's testimony regarding his pain medications was open to different interpretations.  His testimony could have indicated that he was in as much pain as he reported and chose not to take his medication, or it could have indicated that he was in less pain than he reported.  The ALJ decided the latter was the case.  His findings will not be disturbed.  Furthermore, the medical

11

expert testified that plaintiff's conditions simply did not account for the level of pain plaintiff reported. The ALJ's inference that Dearman's pain was not as great as he claimed was free from legal error.

Plaintiff also argues that the ALJ mischaracterized testimony about plaintiff's activities. The ALJ found that despite Dearman's alleged pain, he was still able to participate in a variety of daily activities. Plaintiff testified that he was largely able to take care of his himself and his house, and help to take care of his elderly father despite needing some occasional help from his friends and neighbors. He also volunteered at his church for up to five hours at a time (AR 442–443). Plaintiff did testify that he felt he needed to rest after doing some activities, however, there was ample evidence presented by the medical experts saying that plaintiff could do light work. The ALJ translated these activities to the working world to find that plaintiff could do light work. Thus, the ALJ's conclusion regarding plaintiff's subjective testimony was supported by substantial evidence.

**CONCLUSION**

For the foregoing reasons, plaintiff's motion for summary judgment is **DENIED** and defendant's cross-motion for summary judgment is **GRANTED**. Judgment will be entered accordingly.

**IT IS SO ORDERED.**

Dated: January 19, 2007

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

12